FILED

2009 Jun-11  AM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JAMES A. MORGAN,                )
                                )
      Plaintiff,                )
                                )
v.                              )       CIVIL ACTION NO.
                                )            5:07-CV-02066-KOB
MICHAEL J. ASTRUE,              )
Commissioner of Social Security, )
      Defendant.             )
                                )

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, James A. Morgan, brings this action seeking judicial review of a final

decision of the Commissioner of Social Security that denied his claim for Social Security

Disability Insurance ("SSDI") and Supplemental Security Income ("SSI").

On January 17, 2006, the claimant protectively filed an application for SSDI benefits and

SSI under Titles II and XVI, respectively, of the Social Security Act. The claimant alleged that he

had been disabled since June 13, 2005 because of back pain that required multiple surgical

procedures. The Social Security Administration ("SSA") initially denied the claimant's

application on March 9, 2006, and the claimant appealed for a hearing before the Administrative

Law Judge ("ALJ") on April 5, 2006. At the hearing before the ALJ on May 3, 2007, the

claimant amended the alleged onset date of disability to January 15, 2006. The ALJ denied the

claimant's application on June 11, 2007. The claimant appealed to the SSA Appeals Council,

which denied the claimant's request for review on September 13, 2007. This denial rendered the

ALJ's opinion the Commissioner's final decision. Thus, this case is now ripe for review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. Issue Presented

Whether the ALJ failed to properly apply the Eleventh Circuit's three-part pain standard.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. Legal Standard

A person is entitled to disability benefits when he or she cannot

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for a
> continuous period if not less than 12 months.

42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step,

sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal on of the specific
>     impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the
>     economy?

> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three and five, to a finding of
> disability. A negative answer to any question, other than step three,
> leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider

whether the claimant showed an underlying medical condition, and either

> (1) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (2) that the objectively
> determined medical condition is of such a severity that it can
> reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d

1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

**V. Facts**

The claimant is a high school graduate who was thirty-five years old on January 15, 2006, the date of his alleged onset of disability. (R. 33). His past work experience includes employment as a diesel mechanic, truck-driver, tow-truck operator, and delivery driver supervisor. (R. 32). The claimant alleges that he became unable to work on January 15, 2006 because of pain and muscle spasms resulting from back surgeries in 2004 and 2005 and an inability to lift, twist, bend, sit or stand for long periods. (R. 77). The claimant further alleges that he was prescribed medication for inflammation, pain, and anxiety, which causes him problems with concentration, memory, and drowsiness. (R. 277, 281).

The claimant was injured in a motor vehicle accident in 2001, which has led to a long history of low back pain with radiation to his legs and six surgical procedures. (R. 30, 274). The claimant's surgical procedures included: a diskectomy at L4-5 in May 2004; a lumbar laminectomy and disc excision at L4-5 in June 2005; a lumbar laminectomy at L4 with a posterior spinal fusion in November 2005; the removal of hardware on the left side in June 2006; a temporary neuro-stimulator in either December 2006 or January 2007; and the implantation of a permanent nuero-stimulator on January 25, 2007. (R. 273 - 274).

X-rays of his lumbar spine in January 2003 showed only mild degenerative disc disease at L4-5 and L5-S1. (R. 30). Previous MRIs had shown degenerative disc disease with only mild midline protrusion at L4-5. (R. 30). An MRI in May 2004 showed evidence of a significant annular tear at L4-5 with disc bulging, and the claimant underwent a diskectomy at L4-5. (R. 31). However, the claimant's symptoms persisted and on June 13, 2005, the claimant had a lumber laminectomy and disc excision at L4-5. (R. 31). The claimant continued to report intermittent

4

pain, and on August 7, 2005, he went to the hospital for treatment. (R. 31). The claimant had tenderness and pain with any range of motion of his legs, but otherwise his legs were neurovascularly intact and x-rays showed no acute abnormality. (R. 31). An MRI on August 20, 2005 showed post-surgical changes of enhancing granulation tissue extending into the left lateral recess as well as the end plates of both vertibral bodies at L4-5. (R. 31).

The claimant continued to complain of pain and went to The Spine Center on October 18, 2005 for an evaluation. (R. 31). The exam results indicated only minimal limitations: the claimant exhibited average muscle development and erect posture; his gait was grossly normal; his spine was without signs of trauma, masses, unusual hair or pigment; he had no deformity in his shoulders, pelvis, knees, ankles, or feet; he had normal lordosis and kyphosis; he had no evidence of lumbar or thoracic scoliosis; knee heights were level; he had no Trendelenburg sign noted; he had no tenderness of the spinous processes, paraspinal region sacroiliac joint, posterior superior iliac spine, costovertebral angle, or trachanter; range of motion of his lumbar spine included flexion at 90 degrees, extension at 20 degrees, and right and left lateral bending was at 30 degrees; range of motion of his hips, knees, and ankles was normal; and he had negative cross and straight leg raising bilaterally. (R. 31). However, review of x-rays indicated disc space height loss at L4-5, and review of his MRI indicated some loss of hydration at L4-5. (R. 31). Further, the claimant exhibited some reactive changes on the left side at L4-5 within the superior end place of L5. (R. 31).

Because of continuing complaints of pain, the claimant underwent a lumbar laminectomy at L4 with a posterior spinal fusion on November 9, 2005. (R. 31). Subsequent records from The Spine Center on November 22, 2005 showed that the claimant's leg pain was improved and he

had minimal complaints. (R. 31). Dr. Morris Seymour, an orthopedic surgeon at The Spine Center and the claimant's treating physician, noted that the claimant had made excellent progress, and ongoing records in February 2006 continued to show the claimant doing very well with reported improvement in his leg pain. (R. 31). The claimant appeared to have a consolidated fusion, although posterior consolidation was a little less distinct. (R. 31). Dr. Seymour stated that if the claimant wanted to return to gainful employment, he had no problem with that. (R. 184). However, after an office visit only a month later, Dr. Seymour stated that he did not think the claimant was going to be able to carry on any meaningful employment for at least the next twelve months. (R. 182). Although the MRI taken during that visit revealed no medical evidence of problems, Dr. Seymour based this change of opinion on the claimant's complaints of pain over the last several weeks. (R. 182).

Even though the claimant continued to complain of pain in his left leg, Dr. Seymour reported that he could not find a good explanation for the pain. (R. 31). The claimant's hardware appeared to be in good position; however, on June 26, 2006, the claimant had his hardware removed on the left side, including a locking device, rod, and screw. (R. 31). Initially, the claimant reported improvement, but eventually he stated that his pain had returned. (R. 31). However, an EMG and nerve conduction study showed no evidence of radiculopathy or polyneuropathy. (R. 31). Dr. Seymour recommended pain management treatment for his symptoms. (R. 32).

The claimant received treatment at the Center for Pain Management in 2006 and 2007. Dr. Roddie Gantt, the claimant's treating physician at Tennessee Valley Pain Consultants Center for Pain Management who specializes in anesthesiology and pain management, placed a

6

temporary neurostimulator in the claimant's lower back in late December 2006 or January 2007.
(R. 274). The claimant then underwent the implantation of a permanent neurostimulator in his
spine on January 10, 2007. (R. 242). The Center for Pain Management also treated the claimant
with injections and blocks. (R. 32). In September and November 2006, the claimant reported pain
levels of six out of ten. (R. 243, 244, 251). Following the placement of the spinal cord stimulator
on January 10, 2007, the claimant reported a decrease in his pain levels. On January 16, 2007, the
claimant reported pain at a four out of ten. (R. 240). On February 5, 2007, the claimant reported
pain at a three to four out of ten. (R. 236). On February 19, 2007, the claimant reported pain
levels of a four out of ten, and on April 5, 2007, the claimant reported pain at a five out of ten.
(R. 235, 234).

      At the hearing before the ALJ on May 3, 2007, the claimant testified that he had
degenerative disc disease, high blood pressure, and chronic back pain. (R. 268). He testified that
he was no longer able to coach his son's football or baseball teams because of his back pain. (R.
269). He further testified that the last time he worked was in June 2005 as a supervisor at a
trucking company. (R. 272). The claimant stated that he quit his job to have back surgery on June
13, 2005, and while he was recovering, the company shut down. (R. 273). The claimant testified
that after his back surgery things went from "bad to worse," causing him to undergo a total of six
surgical procedures. (R. 273 - 274). The claimant testified that at his last surgery in January of
2007, Dr. Gantt implanted a neuro-stimulator in his spine. (R. 274). The claimant stated that after
this implantation, his pain level averaged a six out of ten. (R. 275). The claimant further testified
that because of his back pain, he has trouble sleeping, driving, hunting, fishing, working in the
yard, and helping with housework. (R. 275 - 277). The claimant also stated that he could only

stand for twenty minutes, sit for fifteen to twenty minutes, and lift nothing heavier than a gallon of milk. (R. 278 - 279). The claimant testified that he had been compliant with his doctors orders, and that the procedures to eliminate his pain provided only temporary relief, never lasting for more than a month. (R. 280 - 281). He further stated that his doctors told him that they could do nothing more for him. (R. 281). Finally, the claimant testified that he is on medication for inflammation, pain, and anxiety. (R. 274). He testified this medication causes problems with concentration, memory, and drowsiness (R. 277, 281).

In the ALJ's decision dated June 11, 2007, he concluded that the claimant's testimony regarding the severity of his back pain was not entirely credible. (R. 30). The ALJ noted the claimant's history of lumbar decompression and fusion with residual pain and discomfort, but also noted the lack of evidence of radiculopathy or neuropathy. (R. 28). After reviewing the evidence of record, the ALJ found that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (R. 30). Further, the ALJ found that objective medical evidence did not confirm the severity of the alleged pain. (R. 30).

Specifically, the ALJ relied heavily on the medical evidence that showed the claimant only had minimal limitations on October 2005 and a successful consolidated fusion after his surgery in November 2005. Further, the ALJ relied upon the lack of evidence of radiculopathy or polyneuropathy. (R. 32). Additionally, the ALJ gave little weight to Dr. Seymour's opinion in March 2006 that the claimant would not be able to carry on any meaningful employment for the next twelve months, which conclusion was inconsistent with his statement in February 2006 at a

8

follow-up office visit from the claimant's November 2005 spinal fusion. (R. 32). The ALJ stated that the continuing records from Dr. Seymour himself and other treating sources, including those from Dr. Gantt at the Center for Pain Management, did not support Dr. Seymour's opinion. (R. 32). The ALJ also relied heavily on Dr. Seymour's indication that he had nothing further to offer the claimant but to refer him for pain management. (R. 32). Although the claimant continued to seek treatment, he only reported an intensity of pain ranging from three to six out of ten, indicating only mild to moderate levels of pain. (R. 32). Furthermore, his pain level decreased to three and four out of ten, which would be mild to low level moderate, after he received his stimulator. (R. 32). Finally, the ALJ also noted that the claimant continued to maintain his Department of Transportation ("DOT") truck driving license. (R. 32). After a general physical examination on June 1, 2006, the claimant's primary care physician, Dr. Don Jones, signed his DOT form, indicating he was physically able to drive. (R. 32). Because these records were inconsistent with the claimant's testimony regarding the intensity of his pain, the ALJ concluded that his testimony was not entirely credible.

After finding the claimant's allegations of pain not entirely credible, the ALJ assessed the claimant's residual functional capacity ("RFC"). The ALJ concluded that the claimant had the RFC to perform a sedentary level of exertion with a sit/stand option. (R. 29). Further, the ALJ found that the claimant should not work at unprotected heights, around dangerous moving unguarded machinery, or climb ropes, ladders, or scaffolding. (R. 29). Also, the ALJ stated that because of the side effects of the claimant's medications, he would be limited to unskilled work requiring simple, repetitive tasks. (R. 29).

At the hearing before the ALJ, the ALJ asked the vocational expert, Barbara Azon, a

hypothetical question to assess the claimant's ability to work. The vocational expert testified that the claimant's prior work could not be performed by an individual of the claimant's age, education, and work experience performing sedentary work with a sit/stand option away from unprotected heights, ropes, ladders, scaffolding, or dangerous, moving, or unguarded machinery with possible side-effects from medications, potentially affecting his ability to concentrate and persist, limiting him to simple, routine, repetitive, and unskilled work defined as requiring little or no judgment to do simple duties. (R. 286 - 287). The vocational expert further testified that a person with the above limitations would be able to perform several types of sedentary jobs that were available in the region (within fifty miles of Decatur, AL): three hundred surveillance monitor positions, four hundred table worker positions, and four hundred assembler positions. (R. 287 - 288). The vocational expert also stated that hundreds of thousands of these positions are available nationally. (R. 287 - 288).

Because all of the claimant's past relevant work exceeded the exertional level of the claimant's RFC, the ALJ accepted the testimony of the vocational expert, Barbara Azon, that an individual in the claimant's position with the limitations listed above in the ALJ's hypothetical question could no longer perform his past relevant work. (R. 33). The ALJ then considered the claimant's age, education, work experience, and residual functional capacity, finding that jobs existed in significant numbers in the national economy that the claimant could perform. (R. 33). The ALJ found that the claimant is not under a "disability" as defined in the Social Security Act and denied his claim. (R. 34).

## VI. Discussion

The claimant argues that the ALJ failed to properly apply the Eleventh Circuit's pain

standard.  The Eleventh Circuit's three-part test applies when a claimant attempts to establish a disability through his or her own testimony of pain or other subjective symptoms. *Landry v. Heckler*, 728 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The test "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Landry*, 782 F.2d at 1553 (emphasis added). Once the ALJ establishes the existence of an impairment, he must consider all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). In applying this test, the ALJ must explicitly articulate his reasons for rejecting the claimant's subjective complaints of pain; in the absence of such support, then he must accept the testimony as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). However, the ALJ does not have to recite the pain standard word for word; rather, the ALJ must make findings that indicate that the standard was applied. *Cf. Holt*, 921 F.3d at 1223; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

Contrary to the claimant's contentions, the ALJ properly applied the Eleventh Circuit's three-part pain standard. The standard of review does not permit a reviewing court to second guess the ALJ's credibility findings, but requires an inquiry into whether substantial evidence supports his findings. *Graham v. Apfel*, 149 F.3d 1420, 1422 (11th Cir. 1997). In this case, substantial evidence does support the ALJ's decision that the claimant did not meet the pain standard. The ALJ concedes that the claimant presented evidence of an underlying medical

11

condition. The claimant has had several operations on his low back and has been seeking treatment for related pain for several years. However, the ALJ found that the back condition would reasonably be expected to produce some pain, but not the severity, persistence, or limiting effect alleged by the claimant. Further, the ALJ found that objective medical evidence did not confirm the severity of the claimant's alleged pain.

The ALJ stated multiple reasons for discrediting the claimant's allegations of severe pain. First, the ALJ noted that the claimant continued to maintain his DOT truck driving license, which his doctor signed off after a general physical examination on June 1, 2006. The claimant's act of seeking to have his doctor sign a DOT truck driving license in June 2006 is inconsistent with the claimant's allegations that he could not work as of January 2006 because of severe pain. Second, the ALJ noted that an examination in October 2005 showed only minimal limitations. Third, the ALJ found that the objective medical evidence, subsequent to his most recent surgery in November 2005, did not confirm the level of pain or the limitations alleged by the claimant. Medical evidence from November 2005 through February 2006 showed the claimant had a successful consolidated fusion with minimal complaints and that his leg pain was "much improved." An EMG and nerve conduction study in August 2006 showed no evidence of radiculopathy or polyneuropathy. Additionally, in August 2006, Dr. Seymour again noted that the plaintiff had a solid fusion at L4-5 and indicated that he had nothing further to offer the claimant. The ALJ acknowledged that Dr. Seymour then referred the claimant for pain management, but noted that even though the claimant continued to seek pain management, he only reported an intensity of pain ranging from three to six out of ten. Contrary to the claimant's contention, the ALJ determined that these numbers only indicated a mild to moderate level of pain. Further, the

ALJ observed that the claimant's level of pain decreased to three to four out of ten after the implantation of his stimulator. The ALJ stated that this mild to low level of pain is inconsistent with a finding of disability. Because substantial evidence supports the ALJ's decision discrediting the claimant's allegations of severe pain, this court will not re-weigh the evidence.

Finally, the ALJ also considered the opinions of the medical sources in the record as part of his pain standard analysis. The ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A physician's statements that a claimant is "disabled" or "unable to work" are not medical opinions, but opinions on issues reserved to the Commissioner. A physician's opinion on an issue reserved to the Commissioner is not entitled to any special significance. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985).

In this case, the ALJ noted Dr. Seymour's opinion in March 2006 that the claimant would not be able to carry on any meaningful employment for the next twelve months. However, the ALJ gave little weight to this opinion because it was inconsistent with Dr. Seymour's own opinion dated only a month earlier that he had no problem with the claimant returning to gainful employment. Further, the ALJ stated that the continuing records from Dr. Seymour and other treating sources, including that of Dr. Gantt at the Center for Pain Management, did not support Dr. Seymour's opinion of March 2006. As discussed previously, the ALJ gave specific reasons why the subsequent records contradicted Dr. Seymour's March 2006 opinion. Therefore, given the ALJ's explicit findings, this court concludes that the ALJ properly applied the Eleventh

Circuit's three-part pain standard and that substantial evidence supports the ALJ's decision.

## VII. Conclusion

For the reasons stated, the court AFFIRMS the Commissioner's decision. The court will enter a separate Order consistent with this opinion.

Dated this 11th day of June, 2009.

_____

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE